ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2024-Dec-26 18:24:54
60CV-24-11948
C06D17 : 8 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## _____ DIVISION

**MARK HOPKINS and**
**J & M DISTRIBUTORS, INC.**                    **PLAINTIFFS**

v.                              CASE NO._____

**DRYWATER, INC. (a California Corporation);**
**DRY WATER, INC. (a Delaware Corporation);**
**and DRYWATER HOLDINGS, INC.**                  **DEFENDANTS**

### COMPLAINT

COME Plaintiffs, **MARK HOPKINS** and **J & M DISTRIBUTORS, INC.**, by and through counsel, Randy Hall of Little Rock Trial Attorneys, PLLC, and for their Complaint against Defendants, state the following;

### VENUE AND PARTIES

1.     The matters involving this *Complaint* occurred within the borders of the State of Arkansas in Bentonville, Benton County, Arkansas.

2.     **J & M DISTRIBUTORS, INC.**, is a corporation formed under the laws of the State of Arkansas with it's principal place of business in Pulaski County, Arkansas.

3.     **J & M DISTRIBUTORS, INC.**, is engaged in the wholesale distribution of retail items to convenience stores on a nationwide basis.

4.     **MARK HOPKINS** is an individual resident of Pulaski County, Arkansas, and is the President and sole shareholder of **J & M DISTRIBUTORS, INC.** (hereinafter referred to as **"JMD"**)

5.     **DRYWATER, INC. (a California Corporation)**, is a corporation formed under

the laws of the State of California on or about January 12, 2021. **DRYWATER, INC. (a California Corporation)** was properly served with a copy of this *Complaint* and *Summons* in accordance with the Arkansas Rules of Civil Procedure and the United States and Arkansas Constitutions. The Court has in personam jurisdiction over **DRYWATER, INC. (a California Corporation)**.

6. **DRY WATER, INC. (a Delaware Corporation)** is a corporation formed under the laws of the State of Delaware on or about June 29, 2022. **DRY WATER, INC. (a Delaware Corporation)** was properly served with a copy of this *Complaint* and *Summons* in accordance with the Arkansas Rules of Civil Procedure and the United States and Arkansas Constitutions, upon the Registered Agent for Service of Process, **VCORP Services, LLC, 108 W. 13th Street, Suite 100, Wilmington, DE   19801**.  The Court has in personam jurisdiction over **DRY WATER, INC. (a Delaware Corporation).**

7. **DRYWATER HOLDINGS, INC.,** is a corporation formed under the laws of the State of Delaware on or about February 5, 2024. **DRYWATER HOLDINGS, INC.,** was properly served with a copy of this *Complaint* and a *Summons* in accordance with the Arkansas Rules of Civil Procedure and the United States and Arkansas Constitutions, upon the Registered Agent for Service of Process, **Corporate Creations Network, Inc., 1521 Concord Pike, Suite 201, Wilmington, DE 19803**. The Court has in personam jurisdiction over **DRYWATER HOLDINGS, INC.**

8. **BRYAN APPIO** is an individual resident of California (hereinafter referred to as "**APPIO**").  According to representations made by **APPIO,** he is the majority shareholder and the President of all three (3) Drywater corporations named herein (hereinafter referred to collectively as "**DRYWATER ENTITIES**").

2

9.     At all times relevant hereto, **APPIO** made representations to Plaintiffs, both individually and on behalf of and within the course and scope of his employment with, the **DRYWATER ENTITIES**, representing that he is the President and sole shareholder of the **DRYWATER ENTITIES**. **APPIO** is the alter ego of all three (3) **DRYWATER ENTITIES**.

## FACTS

10.     The **DRYWATER ENTITIES** are manufacturers of powdered hydration supplements that are added to water.

11.     Prior to the events set forth herein, **APPIO** represented to Plaintiffs both orally and through the Drywater website, that the **DRYWATER ENTITIES** sold their products nationally, but exclusively on the internet, but also offered their products to wholesalers across the nation for retail distribution.

12.     A third party introduced **APPIO** to **HOPKINS** for the purpose of potential distribution of Drywater products into the convenience store marketplace and other retail outlets throughout the United States.

13     **APPIO**, individually and as president of the **DRYWATER ENTITIES**, negotiated with Plaintiffs and represented that Plaintiffs would be the "national distributor" for Drywater products.

14.     Plaintiffs, in response, negotiated with multiple convenience store chains to retail the Drywater products.   Plaintiffs did secure shelf space for Drywater products in multiple outlets throughout the United States.

15.     Plaintiffs have contacts within Wal-Mart due to their status as a wholesaler. Rather than approach Wal-Mart independently such that **JMD** could wholesale the Drywater products to Wal-Mart, **HOPKINS** did introduce to **APPIO** the concept of selling Drywater products directly

3

from the **DRYWATER ENTITIES** to Wal-Mart in return for a commission on all such sales.

16.     **HOPKINS** informed **APPIO** he had an inside track to the introduction of products into Wal-Mart that were not enjoyed by most persons.

17.     **APPIO** did engage with the concept on behalf of the **DRYWATER ENTITIES**. In response to **HOPKINS'** suggestions, **APPIO** promised Plaintiffs the **DRYWATER ENTITIES** would pay them a commission of five percent (5%) from all Drywater sales made to Wal-Mart if **HOPKINS** could get **APPIO** a meeting with Wal-Mart purchasing agents. The promised commissions were much less than Plaintiffs would have made in profit had they sold the Drywater products to Wal-Mart.

18.     In response and in reliance upon **APPIO's** promises, **HOPKINS**, using his contacts within Wal-Mart, arranged for a **APPIO** to: a) meet with the Bar Code Group, a broker identified by **HOPKINS'** internal Wal-Mart sources; and b) meet with purchasers from Wal-Mart.

19.     **APPIO** did travel to Bentonville, Arkansas, to meet with representatives of the Bar Code Group, **HOPKINS** and Wal-Mart. Then and there, **APPIO** repeated his promises to **HOPKINS** that Plaintiffs would receive five percent (5%) of sales to Wal-Mart and that **JMD** was Drywater's exclusive national sales representative.

20.     All of **HOPKINS'** efforts: a) netted **APPIO** a meeting with Wal-Mart on a time frame unheard of with respect to Wal-Mart; and b) effectively waived Plaintiffs' opportunity to sell the Drywater products to Wal-Mart.

21.     Prior to **HOPKINS'** efforts, **APPIO** had not approached Wal-Mart, had no contacts at Wal-Mart and would otherwise be unable to obtain a meeting with Wal-Mart.

22.     **APPIO** and the **DRYWATER ENTITIES** were successful in obtaining a purchase order from Wal-Mart in a time period typically unheard of from Wal-Mart.

4

23.     **APPIO**, representing the **DRYWATER ENTITIES**, originally denied there was any type of agreement by and between Plaintiffs and the **DRYWATER ENTITIES**. **APPIO** claimed it was the Bar Code Group's responsibility to pay Plaintiffs.

24.     Subsequently, **APPIO** agreed the **DRYWATER ENTITIES** would pay Plaintiffs a one percent (1%) commission on in-store Wal-Mart sales only without any commissions paid on internet sales. Plaintiffs rejected this offer.

## COUNT I- BREACH OF CONTRACT

25.     The allegations set forth in paragraphs 1-24 are incorporated by reference herein.

26.     **APPIO** and the **DRYWATER ENTITIES** entered into an oral contract with Plaintiffs the terms of which were "you use your internal resources to get me a meeting with Wal-Mart, allow me to sell directly to Wal-Mart and I will pay you a five-percent (5%) commission on all sales to Wal-Mart". In response, Plaintiffs did forgo the opportunity to approach Wal-Mart independently of **APPIO** and Drywater and used their sources to get **APPIO** a meeting with Wal-Mart purchasers.

27.     **APPIO** and the **DRYWATER ENTITIES** have, despite obtaining purchase orders from Wal-Mart, failed to refused to pay the agreed upon commissions to Plaintiffs in direct breach of the parties agreement.

28.     Plaintiffs have been damaged and entitled to recover past, present and future commissions on all Drywater product sales to Wal-Mart.

29.     Plaintiffs are entitled to their attorney's fees and costs.

## COUNT II- UNJUST ENRICHMENT

30.     The allegations set forth in paragraphs 1-29 are incorporated herein by reference.

31.     Pleading alternatively, Plaintiffs did, in reliance upon **APPIO**'s representations: a)

5

use their internal resources to obtain a very fast meeting with Wal-Mart for **APPIO** and the **DRYWATER ENTITIES** and b) forwent their own individual efforts to sell Drywater products to Wal-Mart.

32.    **APPIO** and the **DRYWATER ENTITIES** would not have obtained the meeting without the efforts of Plaintiffs.

33    **APPIO** and the **DRYWATER ENTITIES** will be unjustly enriched if they are not required to pay the commissions promised to Plaintiffs.

34    Plaintiffs have been damaged in the amount of past, present and future commissions promised on the sale of Drywater products to Wal-Mart or alternatively, on its lost profits had it sold the Drywater products to Wal-Mart.

## COUNT III- ACCOUNTING

35.    Plaintiffs incorporate the allegations set forth in paragraphs 1-34 word for word.

36.    Plaintiffs are entitled to an accounting from **APPIO** and the **DRYWATER ENTITIES** that set forth any and all past, present and future sales of Drywater products to Wal-Mart such that they can understand any and all commissions due them.

## COUNT IV -FRAUD

37.    Plaintiffs incorporate the allegations set forth in paragraphs 1-36 word for word.

38.    **APPIO** did fraudulently, with intent and malice, make representations to **Plaintiffs** that either he, or in his capacity as President of the **DRYWATER ENTITIES**, would cause the **DRYWATER ENTITIES** to pay Plaintiffs a five percent (5%) commission on all sales to Wal-Mart when he never intended to make such payments.

39:    Plaintiffs reasonably and justifiably relied upon **APPIO**'s false promises to their own detriment.

6

40.    In reliance upon **APPIO**'s false promises, Plaintiffs did forgo their own personal efforts to sell the Drywater products, or similar products, to Wal-Mart.

41.    In reliance upon **APPIO**'s false promises, Plaintiffs did use their internal resources to obtain a meeting with Wal-Mart for Drywater and **APPIO** and thereby lost an opportunity to introduce and sell similar products to Wal-Mart.

42.    **APPIO** falsely misrepresented to **Plaintiffs** the commission would be paid to induce Plaintiffs into the actions they took for and on behalf of **APPIO** and the **DRYWATER ENTITIES**.

43.    The **DRYWATER ENTITIES** are vicariously liable for the intentional, willful and wanton acts of **APPIO** in his capacity as President of the **DRYWATER ENTITIES**. **APPIO** is personally liable for his intentional conduct to take Plaintiffs' business opportunity.

44.    Plaintiffs have been damaged in an amount they would have received had they sold the Drywater products to Wal-Mart in an amount to be proved at trial.

### COUNT V-INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTANCY

45.    The allegations set forth in paragraphs 1-44 are set forth herein word for word.

46.    Plaintiffs enjoyed a expectancy to conduct business with Wal-Mart by distributing either Drywater products, or products similar hydration products that are added to water.

47.    Plaintiffs forwent that opportunity and essentially handed the same to **APPIO** and the **DRYWATER ENTITIES** on the condition and promise that the **DRYWATER ENTITIES** and **APPIO** would pay commissions to Plaintiffs.

48.    Defendants took the opportunity from Plaintiffs with no intention of adhering to the parties agreement.

49.    Plaintiffs have been damaged in amounts to be proved at trial.

7

## VI- DAMAGES

50.     Plaintiffs are entitled to compensatory and punitive damages.

51.     Plaintiffs pray for trial by jury on all causes of action.

Wherefore, Plaintiffs pray for an order that requires Defendants to render an accounting of past, present, and future sales to Wal-Mart, for judgement against Defendants in amounts to be proved at trial, for attorney's fees, for pre and post-judgement interest, for punitive damages and for any and all other relief to which the Court and the proof adduced at trial deem they are entitled.

Respectfully submitted,

/s/   Randy Hall
Randy Hall, Ark. Bar #89083
Little Rock Trial Attorneys, PLLC
415 North McKinley, Suite 1000
Little Rock, Arkansas 72205
(501) 404-2333 (f) 501-404-2336
Randy@littlerocktriallawyers.com

8